IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:08-CR-34-FL-1
No. 7:13-CV-11-FL

| | |
|---|---|
| PERRY REESE, III, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Respondent. ) | ORDER |

This matter is before the court on the Memorandum and Recommendation ("M&R") of United States Magistrate Judge William A. Webb (DE 138), regarding the government's motion to dismiss (DE 131) *pro se* petitioner's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody ("motion to vacate") (DE 125). Petitioner has timely filed objections to the M&R, and the time for responding to these objections has expired. Also before the court is petitioner's motion to amend his motion to vacate, captioned as a motion to expand the record (DE 140). These matters are ripe for ruling. For reasons given, the court will GRANT the government's motion to dismiss, DENY petitioner's motion to vacate, and DENY petitioner's motion to amend.

**BACKGROUND**

On February 25, 2009, petitioner, a doctor who operated Roseboro Urgent Care, P.A., was convicted by a jury of two counts of distribution of oxycodone, in violation of 21 U.S.C. § 841(a)(1); and one count of participation in a pattern of racketeering activity, in violation of 18 U.S.C. §

1962(c) ("RICO"). Petitioner was sentenced on February 18, 2010, to 240 months imprisonment and three years supervised release. Petitioner appealed his conviction and sentence to the Fourth Circuit Court of Appeals arguing that: (1) the evidence presented was insufficient to show he distributed controlled substances outside of the usual course of practice and not for a legitimate medical purpose; (2) the court erred in its RICO instructions to the jury; (3) the court erred in calculating his sentence; and (4) his sentence was both procedurally and substantively unreasonable. The Fourth Circuit affirmed petitioner's conviction and sentence, and the Supreme Court denied review.

On January 14, 2013, petitioner timely filed the instant motion to vacate, asserting four grounds for relief. First, petitioner asserts that 21 U.S.C. § 841(a)(1) was unconstitutional as applied to him because the government did not prove his actions were done for other than a legitimate medical purpose in the usual course of his professional practice. Second, petitioner contends that the government failed to allege and prove a necessary element of his RICO conviction, namely, the effect of the enterprise on interstate commerce. Third, petitioner contends that he received ineffective assistance of counsel where trial counsel failed to object to the testimony of the government's expert witness. Fourth, he contends that use of the 2009 Guidelines Manual at sentencing, instead of the 2002 Guidelines Manual, violated the Ex Post Facto Clause of the United States Constitution.

The government filed a motion to dismiss petitioner's motion to vacate pursuant to Federal Rule of Civil Procedure 12(b)(6) on March 20, 2013. The court referred both motions for M&R. It is recommended in the M&R that the court grant the government's motion to dismiss and deny petitioner's motion to vacate. Petitioner timely filed his objections to the M&R. On January 9,

2014, petitioner filed what was styled as a motion to expand the record pursuant to Rule 7 of the Rules Governing § 2255 proceedings, or, in the alternative, to amend his petition.

**COURT'S DISCUSSION**

A.   Standard of Review

The district court reviews *de novo* those portions of a magistrate judge's M&R to which specific objections are filed. 28 U.S.C. § 636(b). The court does not perform a *de novo* review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(c).

Rule 12 of the Rules Governing Section 2255 Proceedings ("Habeas Rules") states that, "[t]he Federal Rules of Civil Procedure . . . to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules." A motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A claim is stated if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570

3

(2007)).

In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable" to the non-moving party but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). In other words, this plausibility standard requires a petitioner to articulate facts, that, when accepted as true, demonstrate that the petitioner has stated a claim that makes it plausible he is entitled to relief. Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 678, and Twombly, 550 U.S. at 557).

B.  Analysis

    1.  Ground One

Petitioner first objects to the recommendation that the court dismiss his first ground for relief as foreclosed because the argument raised has been decided adversely to him on direct appeal. The court agrees with the conclusion in the M&R that petitioner is attempting to relitigate issues that the Fourth Circuit Court of Appeals has already rejected on appeal. It is well established that a petitioner may not do so. United States v. Roane, 378 F.3d 382, 396 (4th Cir. 2004).

Although petitioner styles his first ground for relief as an assertion that 21 U.S.C. § 841 is unconstitutional as applied to him, the gravamen of petitioner's first ground is simply that the government introduced insufficient evidence to sustain his conviction. Petitioner contends that his conviction likely rested upon the "subjective opinion" of the government's expert witness, Dr. Mark Romanoff ("Dr. Romanoff") that petitioner's conduct was inappropriate and fell beyond the bounds

4

of professional medical practice. Petitioner further asserts that his lack of good faith could not be inferred based on the evidence presented. These contentions are squarely foreclosed by the Fourth Circuit's holding on petitioner's direct appeal that "the government's evidence at trial was more than sufficient to support the jury's verdict," and that "a rational trier of fact would have little trouble finding that [petitioner's] actions were outside the scope of medical practice and . . . not for any legitimate medical purpose." United States v. Reese, 442 F. App'x 8, 10, 11 (4th Cir. 2011). Accordingly, petitioner's objections regarding his first ground for relief are overruled and this ground is dismissed.

    2.    Ground Two

In his second ground, petitioner asserts that his RICO conviction cannot stand because the government failed to allege and introduce any evidence of an effect on interstate commerce. The M&R recommends that this claim be dismissed on the basis of procedural default where this claim was not raised before the Fourth Circuit.

The procedural-default rule instructs that, ordinarily, claims a petitioner failed to raise on direct appeal may not be raised on collateral review. Massaro v. United States, 538 U.S. 500, 504 (2003). "A procedural default, however, may be excused in two circumstances: where a person attacking his conviction can establish (1) that he is 'actually innocent' or (2) 'cause' for the default and 'prejudice' resulting therefrom. United States v. Fugit, 703 F.3d 248, 253 (4th Cir. 2012) (quoting Bousley v. United States, 523 U.S. 614, 622 (1998)). Furthermore "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." Massaro, 538 U.S. at 504.

Petitioner objects to the recommended dismissal of his second ground, arguing that this ground is properly raised because (1) he is actually innocent of the RICO violation, and (2) he received ineffective assistance of counsel from both trial and appellate counsel where neither raised the government's supposed failure to present any evidence on a required element of the RICO violation. The court considers these contentions in turn.

"[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Murray v. Carrier, 477 U.S. 478, 496 (1986). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him . . . ." Schlup v. Delo, 513 U.S. 298, 327 (1995). "The petitioner thus is required to make a stronger showing than that needed to establish prejudice. At the same time, the showing of 'more likely than not' imposes a lower burden of proof than the 'clear and convincing' standard . . . ." Id.

In order to convict petitioner of the RICO violation, the government was required to prove "(1) the existence of an enterprise; (2) the defendant's association with the enterprise; (3) the defendant's participation in the affairs of the enterprise; (4) a pattern of racketeering activity; and (5) the enterprise's effect on interstate or foreign commerce." United States v. Hooker, 841 F.2d 1225, 1227 (4th Cir. 1988). Petitioner maintains that he is actually innocent of this charge as no evidence of the fifth element was presented. In order to prove the this element "[t]he Government need not demonstrate that the alleged acts of racketeering themselves directly involved interstate commerce." United States v. Altomare, 625 F.2d 5, 8 n. 8 (4th Cir. 1980). Moreover, the evidence of the enterprise's connection with interstate commerce need not be "copious," rather, the "standard

6

required to satisfy the interstate commerce requirement" is "minimal." United States v. Gray, 137 F.3d 765, 773 (4th Cir. 1998).

In this case, contrary to petitioner's assertion, the government brought forward a great deal of evidence that the enterprise with which petitioner was associated – namely, Roseboro Urgent Care, P.A. – had an effect on interstate commerce. Some of this evidence introduced includes: an invoice for file folders shipped to Roseboro Urgent Care from a company in Arizona, an invoice for medical laboratory supplies and equipment from a South Carolina company, a bill for medical professional liability insurance purchases from Indiana, an invoice for drugs and supplies ordered from a Virginia company. The government also introduced many other documents demonstrating Roseboro Urgent Care, P.A.'s commercial interactions with various other entities outside of North Carolina. See Tr. Trial Day 2, 46-62 (DE 112). In the face of this great deal of evidence of a nexus with interstate commerce, petitioner's contention that he is actually innocent of the RICO violation due to a lack of such a nexus must fail.

For the same reason, petitioner's claim for ineffective assistance of counsel based upon his trial and appellate counsel's failure to raise this supposed lack of evidence is also without merit. A successful claim for ineffective assistance of counsel requires petitioner to show that "(1) his counsel's performance fell below an objective standard of reasonableness in light of the prevailing professional norms, and (2) 'there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Bell v. Evatt, 72 F.3d 421, 427 (4th Cir. 1995) (quoting Strickland v. Washington, 466 U.S. 668, 688, 694 (1984)). Furthermore, there is a "strong presumption" when reviewing an attorney's performance that "counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

7

Here, as noted, the government introduced a great deal of evidence showing Roseboro Urgent Care, P.A.'s effect upon interstate commerce. Accordingly, petitioner cannot show that in failing to make an argument based upon the purported lack of such evidence, the performance of either trial or appellate counsel fell below an objective standard of reasonableness. Similarly, petitioner cannot show a reasonably probability that had such an argument been raised, the result of his trial or appeal would have been different. Petitioner's objections regarding his second ground for relief are overruled, and this ground is dismissed.

   3.   Ground Three

Petitioner's third asserted ground for overturning his conviction is that trial counsel was ineffective for failing to object to the testimony of Dr. Romanoff. Specifically, petitioner argues that trial counsel was ineffective where he did not object based upon: (1) the government's failure to provide, in advance, a written summary of Dr. Romanoff's anticipated testimony pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G), and (2) Daubert v. Merrell Down Pharmaceuticals, Inc., 509 U.S. 579 (1993). For the reasons set forth in the M&R, petitioner's objections will be overruled.

As noted in the M&R, assuming petitioner could state a claim for deficient performance by counsel, see Strickland, 466 U.S. at 688, he cannot show that had these claims been made, it would have affected the outcome of the proceedings. See id. at 694. First, there is no support in the record showing that this court would have excluded Dr. Romanoff's testimony on Daubert grounds. Petitioner contends that Dr. Romanoff's expertise in pain management did not allow him to testify as to the appropriate standards of medical practice with respect to a general medical practice. When an expert's qualifications are challenged, "'the test for exclusion is a strict one, and the purported expert must have neither satisfactory knowledge, skill, experience, training nor education on the

8

issue for which the opinion is proffered.'" Kopf v. Skyrm, 993 F.2d 374, 377 (4th Cir. 1993) (quoting Thomas J Kline, Inc. v. Lorillard, Inc., 878 F.2d 791, 799 (4th Cir. 1989)).

Dr. Romanoff is a board-certified anesthesiologist with special qualifications in pain management. See Tr. Trial Day 3 Romanoff Excerpt 4 (DE 69). He currently works at a hospital in Charlotte, North Carolina, as well as in certain pain clinics in North Carolina. Id. at 5-6. He is the medical director of one of those pain clinics, located in Salisbury, North Carolina. Id. at 6. While Dr. Romanoff does not work in a rural urgent care center, he clearly has satisfactory knowledge, experience, training, and education to opine as to general standards relating to prescribing pain medication, and whether a general practice physician was acting within the scope of medical practice or for a legitimate medical reason in prescribing pain medication. There is therefore no indication that Dr. Romanoff's testimony would have been excluded under Daubert.

Similarly, petitioner cannot show that a failure to object to Dr. Romanoff's testimony based on a purported failure to comply with Rule 16(a)(1)(G) affected the outcome of the trial. Even if the government failed to comply with this rule, petitioner admits that the court would not have excluded Dr. Romanoff for this failure. See United States v. Deloach, 208 F.3d 210, 2000 WL 274972, at *2 (4th Cir. Mar. 14, 2000) (unpublished table decision) ("The sanction of exclusion of testimony, however, is almost never imposed absent a constitutional violation or statutory authority for the exclusion.") (quoting United States v. Charley, 189 F.3d 1251, 1262 (10th Cir. 1999)). Petitioner argues, however, that had trial counsel made an objection based on this Rule 16 failure, the government would have been forced to provide a summary of Dr. Romanoff's anticipated testimony, and counsel would then have made a motion *in limine* to exclude Dr. Romanoff's

Case 7:08-cr-00034-FL   Document 141   Filed 01/23/14   Page 9 of 17

testimony on Daubert grounds. Even if counsel had made such a motion, however, for reasons given above, these is no support in the record that such a motion would have been successful. Thus, petitioner's objections as to his third ground for relief are overruled, and this ground is dismissed.

    4.        Ground Four

In petitioner's fourth and final ground for relief, he attacks his sentence rather than his conviction. Therein, petitioner asserts that the court violated the Constitution's Ex Post Facto Clause by using the 2009 Sentencing Guidelines Manual rather than the 2002 Sentencing Guidelines Manual. See U.S. CONST. Art. I, § 9, cl. 3 ("No . . . ex post facto Law shall be passed."). Petitioner further asserts that trial counsel was ineffective for failure to object to the use of the 2009 Guidelines, and that appellate counsel was ineffective for failure to raise this argument before the Fourth Circuit. In the M&R it is recommended that this asserted ground for relief be dismissed. The court will overrule petitioner's objections to the M&R, but will dismiss this ground on a partially different basis than that suggested in the M&R.

The Sentencing Guidelines direct a sentencing court to "use the Guidelines Manual in effect on the date that the defendant is sentenced." U.S.S.G. § 1B1.11(a). If, however, the "court determines that use of the Guidelines Manual in effect on the date that the defendant is sentenced would violate the ex post facto clause of the United States Constitution, the court shall use the Guidelines Manual in effect on the date that the offense of conviction was committed." U.S.S.G. § 1B1.11(b)(1). The Fourth Circuit Court of Appeals has held that if use of the Guidelines Manual in effect at sentencing would lead to a higher guideline sentencing range for a defendant than the use of the Guidelines Manual in effect on the date of the offense of conviction, such use contravenes the Ex Post Facto Clause. United States v. Lewis, 606 F.3d 193, 199 (4th Cir. 2010). Petitioner

10

contends that use of the 2009 Guidelines Manual – the Guidelines Manual in effect as of the date of his sentencing – led to a higher guideline range than use of the 2002 Guideline Manual – which was in effect on the date of the offenses of conviction.

In the M&R, it is recommended that the court dismiss petitioner's claim that this court violated the Ex Post Facto Clause as it had been procedurally defaulted. As noted therein, petitioner did not present this claim on his direct appeal, and therefore, the court adopts this recommendation and dismisses this claim. See United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir 1999).

In this fourth ground for relief, petitioner also asserts that his trial and appellate counsel were ineffective for failing to raise this asserted violation of the Ex Post Facto Clause. These claims are not procedurally defaulted.[1] See Massaro, 538 U.S. at 504. Petitioner, however, fails to make sufficient factual allegations to show that such a violation occurred. Petitioner therefore fails to demonstrate either that counsel's performance in failing to raise this purported violation fell below an objective standard of reasonableness or that the result of either his trial or appeal would have been different had counsel raised the Ex Post Facto Clause.

Under the 2002 Guidelines Manual, a sentencing court would calculate the quantity of oxycodone attributable to a defendant based upon the total weight of the pill containing the oxycodone. One gram of pill weight was considered equivalent to 500 grams of marijuana. See U.S.S.G. § 2D1.1(c) Application Note 10 (2002) (Drug Equivalency Table); U.S.S.G. § 2D1.1(c)

---

[1] When recommending dismissal for procedural default, the analysis in the M&R does not distinguish between petitioner's claim for relief directly based upon the asserted violation of the Ex Post Facto Clause and his claims for relief for ineffective assistance of counsel relating to counsels' failure to raise an Ex Post Facto Clause issue. The court finds that only the direct claim, and not the ineffective assistance of counsel claims, are procedurally defaulted. The analysis in the M&R proceeds to alternatively examine petitioner's Ex Post Facto Clause claims on the merits, finding no violation, and therefore no ineffective assistance. While the court ultimately agrees with the conclusion that petitioner fails to state a claim for ineffective assistance, it does so on a different basis. The analysis in the M&R relies upon an exhibit filed by the government – discussed in footnote 4, *infra*, which the court may not properly consider on a motion to dismiss.

Note A ("Unless otherwise specified, the weight of a controlled substance . . . refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance."). Under the 2009 Guidelines Manual, on the other hand, a sentencing court was specifically instructed to not consider the weight of the pill, but only the weight of the active oxycodone content in that pill. See U.S.S.G. § 2D1.1(c), Note B ("The term 'Oxycodone (actual)' refers to the weight of the controlled substance, itself, contained in the pill, capsule, or mixture."). One gram of active oxycodone, however, was considered equivalent to 6,700 grams of marijuana. U.S.S.G. § 2D1.1(c) Application Note 10(E) (2009) (Drug Equivalency Table).

In this case, petitioner was held accountable for 174.165 grams of active oxycodone. Pursuant to the 2009 Guidelines Manual, this was found to be equivalent to slightly more than 1,166 kilograms of marijuana, yielding a base offense level of 32. See Tr. Sentencing Hr'g 88; U.S.S.G. § 2D1.1(c) (2009). Petitioner asserts that under the 2002 Guidelines Manual, the marijuana equivalency for the total weight of the pills he was held accountable for would be far less than 1,166 kilograms, resulting in a lower base offense level.

At sentencing, petitioner was found responsible for distributing 6,617 pills containing various amounts of oxycodone.[2] Petitioner asserts that certain kinds of pills containing oxycodone – namely, OxyContin containing doses of ten (10), twenty (20), and forty (40) milligrams of oxycodone – all weigh 135 milligrams. See Mem. Supp. Mot. to Vacate 54. The court will accept this as true for the limited purpose of analyzing the government's motion to dismiss only.

---

[2] Petitioner asserts that the pill total was 5,837, see Mem. Supp. Mot. to Vacate 54 n.31. This total is based upon the government's Exhibit A to its sentencing memorandum (located at docket entry 93-1, although petitioner mistakenly asserts it is located at docket entry 93-2). This exhibit, however, erroneously lists the "grand total" number of pills listed as 5,837. The total number of pills listed therein was actually 6,017. Furthermore, at sentencing, the court found petitioner was responsible not only for the pills as listed in Exhibit A to the government's sentencing memorandum, but also for an additional 600 pills. Compare Government's Sentencing Memorandum Ex. A, with Tr. Sentencing Hr'g 80, 87-88.

At sentencing, however, petitioner was not held accountable for only these kind of OxyContin pills. Petitioner was also held accountable for OxyContin pills containing five and eighty (80) milligram doses of oxycodone, as well as various Percocet pills. Indeed, the vast majority of the pills for which petitioner was held accountable were not the OxyContin pills he asserts weigh 135 milligrams. See Government's Sentencing Mem. Ex. A (DE 93-1) (noting all of the Percocet and OxyContin pills sold – except for the 600 further pills petitioner was held accountable for at sentencing – and their doses); Tr. Sentencing Hr'g 80 (holding petitioner responsible for an additional 600 pills – all of which were OxyContin pills containing forty (40) milligrams of oxycodone).[3]

Petitioner has not alleged any weights for the great majority of the pills he was held accountable for. Moreover, there is nothing on the record to which the court may properly refer on a motion to dismiss informing the court of how much these pills weigh.[4] Without any kind of allegation as to these pill weights, petitioner has failed to allege facts, which accepted as true, would make plausible his assertion that a violation of the Ex Post Facto Clause occurred. Petitioner therefore fails also to raise sufficient factual matter to make plausible his claim that his counsel were

---

[3] The court calculates that between 1,630 and 1,795 of the pills at issue were OxyContin pills containing ten (10), twenty (20), or forty (40) milligrams of oxycodone. The ambiguity comes from the fact that 165 of the pills purchased in controlled buys contain forty (40) milligrams of oxycodone, and the record does not inform as to whether these were OxyContin or Percocet pills. Thus, between 4,822 and 4,987 pills for which petitioner was held accountable are not OxyContin pills that petitioner asserts weigh 135 milligrams.

[4] The government attached an exhibit to its supplemental memorandum in support of its motion to dismiss listing many of the pills petitioner was held accountable for at sentencing – but not including the 600 additional OxyContin pills petitioner was found accountable for at sentencing – the supposed weight of those pills, and calculating the marijuana equivalency of those pills under the 2002 Sentencing Guidelines. See DE 136-1. The government calculated that under the 2002 Sentencing Guidelines, the marijuana equivalency of those pills would be 1,396 kilograms, also resulting in a base offense level of 32. The government explained that it obtained the pill weights from the United States Drug Enforcement Administration and from Endo Pharmaceuticals. Where these pill weights do not appear elsewhere on the record, they are evidence this court cannot properly consider on a motion to dismiss. Thus, the court does not consider the government's calculations here.

13

ineffective for failing to raise this issue.

In his objection to the M&R, petitioner presents a differing theory as to how to calculate the drug weight for which he should be held accountable, attempting to rescue his claim for ineffective assistance with respect to this issue. Petitioner points out that U.S.S.G. § 2D1.1 Application Note 11 (2002) provided that

> [i]f the number of doses, pills, or capsules but not the weight of the controlled substance is known, multiply the number of doses, pills, or capsules by the typical weight per dose in the table below to estimate the total weight of the controlled substance . . . . Do not use this table if any more reliable estimate of the total weight is available from case-specific information.

Petitioner asserts that in this case, the weight of the controlled substance, namely oxycodone, is known to be 174.165 grams in his case. He therefore contends that this "case-specific" information means that the correct marijuana equivalency is only 87.0825 kilograms, which weight he arrives at by multiplying 174.165 grams by the 2002 Guidelines Manual marijuana equivalency of 500 grams. This corresponds to a base offense level of 24. See U.S.S.G. § 2D1.1(c)(8).

Contrary to petitioner's assertion, under the 2002 Guidelines Manual, in the case of oxycodone, the "weight of the controlled substance" is not considered to be the active oxycodone in the pill. Rather, "[u]nless otherwise specified, the weight of a controlled substance . . . refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance." U.S.S.G. § 2D1.1(c) Note A. While the 2009 Guidelines Manual, as noted above, contains a note specifying that a court is not to consider the weight of the entire mixture when determining the weight of oxycodone, see U.S.S.G. § 2D1.1(c) Note B, the 2002 Guidelines Manual contains no such instruction. Accordingly petitioner's assertion that under the 2002 Guidelines Manual, the weight of oxycodone would be known to be 174.165 grams is without merit, his

14

ineffective for failing to raise this issue.

In his objection to the M&R, petitioner presents a differing theory as to how to calculate the drug weight for which he should be held accountable, attempting to rescue his claim for ineffective assistance with respect to this issue. Petitioner points out that U.S.S.G. § 2D1.1 Application Note 11 (2002) provided that

> [i]f the number of doses, pills, or capsules but not the weight of the controlled substance is known, multiply the number of doses, pills, or capsules by the typical weight per dose in the table below to estimate the total weight of the controlled substance . . . . Do not use this table if any more reliable estimate of the total weight is available from case-specific information.

Petitioner asserts that in this case, the weight of the controlled substance, namely oxycodone, is known to be 174.165 grams in his case. He therefore contends that this "case-specific" information means that the correct marijuana equivalency is only 87.0825 kilograms, which weight he arrives at by multiplying 174.165 grams by the 2002 Guidelines Manual marijuana equivalency of 500 grams. This corresponds to a base offense level of 24. See U.S.S.G. § 2D1.1(c)(8).

Contrary to petitioner's assertion, under the 2002 Guidelines Manual, in the case of oxycodone, the "weight of the controlled substance" is not considered to be the active oxycodone in the pill. Rather, "[u]nless otherwise specified, the weight of a controlled substance . . . refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance." U.S.S.G. § 2D1.1(c) Note A. While the 2009 Guidelines Manual, as noted above, contains a note specifying that a court is not to consider the weight of the entire mixture when determining the weight of oxycodone, see U.S.S.G. § 2D1.1(c) Note B, the 2002 Guidelines Manual contains no such instruction. Accordingly petitioner's assertion that under the 2002 Guidelines Manual, the weight of oxycodone would be known to be 174.165 grams is without merit, his

14

objection is overruled, and his fourth ground for relief is dismissed.

C.      Motion to Amend

Petitioner has also filed what he has captioned a motion to expand the record pursuant to Rule 7 of the Habeas Rules. Petitioner also describes this motion as one, in the alternative, for leave to amend his motion to vacate. Therein, petitioner seeks to add to his motion to vacate a claim that the court erred in purportedly increasing his statutory mandatory minimum sentence based upon fact finding conducted at sentencing.

Rule 7 of the Habeas Rules provides that "[i]f [petitioner's] motion [to vacate] is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the motion." Here, petitioner is seeking to amend his claim, not expand the record with materials relating to his existing motion. Accordingly, the court construes petitioner's motion as a motion to amend.

Leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). This liberal rule gives effect to the federal policy in favor of resolving cases on their merits, rather than disposing of them on technicalities. See Ostrzenski v. Seigel, 177 F.3d 245, 252-53 (4th Cir. 1999). Leave to amend should not be given, however, if the proposed amendment sought is futile. Foman v. Davis, 371 U.S. 178, 182 (1962). A proposed amendment is futile if it is clearly insufficient or frivolous on its face. Johnson v. Oroweat Foods Co., 785 F.2d 503, 510 (4th Cir. 1986).

In his motion to amend, petitioner points to the Supreme Court's recent holding that, generally, any fact which increases a mandatory minimum sentence is an element of a crime which must be submitted to a jury and found beyond a reasonable doubt, rather than a sentencing factor which the court may find at sentencing by a preponderance of the evidence. Alleyne v. United

15

States, 133 S.Ct. 2151, 2155 (2013). In this case, however, contrary to petitioner's assertion, he was not subject to a mandatory minimum of ten (10) years based upon facts found by the court at sentencing. Indeed, petitioner was not subject to any mandatory minimum. Accordingly, petitioner's motion to amend is denied as futile.

D.  Certificate of Appealability

A § 2255 applicant "cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Fed. R. App. P. 22(b)(1). A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Where a petitioner's constitutional claims have been adjudicated and denied on the merits by the district court, the petitioner must demonstrate reasonable jurists could debate whether the issue should have been decided differently or show the issue is adequate to deserve encouragement to proceed further. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000). Where a petitioner's constitutional claims are dismissed on procedural grounds, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) 'that jurists of reason would find it debatable whether the petition [or motion] states a valid claim of denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" Rose v. Lee, 252 F.3d 676, 684 (4th Cir.2001) (quoting Slack, 529 U.S. at 484).

After reviewing the claims presented in the habeas petition in light of the applicable standard, the court concludes that reasonable jurists would not find the court's treatment of any of petitioner's claims debatable or wrong and that none of the issues presented by petitioner are

adequate to deserve encouragement to proceed further. Accordingly, a certificate of appealability is denied.

## CONCLUSION

Based on the foregoing, the court ADOPTS the recommendation contained in the M&R, and GRANTS the government's motion to dismiss (DE 131). Petitioner's § 2255 motion (DE 125) is DISMISSED WITH PREJUDICE. Petitioner's motion to amend (DE 140) is DENIED. Petitioner is DENIED a certificate of appealability.

SO ORDERED, this the 23rd day of January, 2014.

LOUISE W. FLANAGAN
United States District Judge